E-filing

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  THEODORA BERGER
   Senior Assistant Attorney General
3  SALLY MAGNANI KNOX
   Supervising Deputy Attorney General
4  DEBORAH R. SLON, State Bar No. 240839
   Deputy Attorney General
5    1300 I Street, Suite 125
     P.O. Box 944255
6    Sacramento, CA 94244-2550
     Telephone: (916) 327-7851
7    Fax: (916) 327-2319
     Email: Deborah.Slon@doj.ca.gov
8
   Attorneys for Plaintiff California Department of Toxic
9  Substances Control

ORIGINAL FILED MAY 29 2007 RICHARD W. WIEKING CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA OAKLAND

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

C07-02779 WDB ADR

| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, Plaintiff, v. ESTATE OF REITMAN, ex rel. Audrey Berkson, Executrix; AUDREY BERKSON, Executrix Defendants. | COMPLAINT FOR RECOVERY OF RESPONSE COSTS (Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601 - 9675) |
|---|---|

Plaintiff, California Department of Toxic Substances Control, alleges as follows:

STATEMENT OF THE ACTION

1. The California Department of Toxic Substances Control ("Department") makes a claim for relief under section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. sections 9601 through 9675, as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. 99-499, 100 Stat. 1613 (1986) for the recovery of response costs related to a release or threatened release of

[COMPLAINT FOR RECOVERY OF RESPONSE COSTS] -
1

hazardous substances from a plating site located on Pearmain Street in Alameda County, California ("Pearmain Site" or "Site"). The Pearmain Site encompasses three parcels of property (Assessor's Parcel Numbers 045-5243-001, 045-5243-002-01, and 045-5243-005-01, corresponding to 10301 Pearmain Street, 10319 Pearmain Street, and 10323 Pearmain Street) and consists of two buildings and a fenced storage yard.

## VENUE AND JURISDICTION

2. This Court has jurisdiction over this CERCLA claim pursuant to 28 U.S.C. section 1331 and 42 U.S.C. section 9613(b), and pursuant to 28 U.S.C. section 1391(b) because the release or threatened release of hazardous substances into the environment occurred in this District.

## PLAINTIFF

3. Plaintiff Department is a state agency organized and existing under state law. The Department is a state agency responsible under state law for determining whether there has been a release or threatened release of a hazardous substance into the environment, and whether responsive action is necessary.

## DEFENDANTS

4. Defendant Audrey Berkson, an individual, is the Executrix of the Estate of Abraham Isidore Reitman ("Estate of Reitman" or "Reitman Estate"), which owned the Pearmain Site at the time of a release or threatened release of hazardous substances at the Site.

5. Defendant Estate of Reitman owned the Pearmain Site at the time of the release or threatened release of hazardous substances at the Site.

## FACTUAL BACKGROUND

6. The Pearmain Site is located in a mixed residential/industrial area of Oakland, California. The K&L Plating Company ("K&L") operated as a metal plating facility at the Pearmain Site for approximately four years, until it was shut down in response to an order issued by the Alameda Superior Court for numerous compliance problems with local, state, and federal environmental laws.

7. The Estate of Reitman acquired the Pearmain Site after decedent Abraham

[COMPLAINT FOR RECOVERY OF RESPONSE COSTS] -

Reitman's death on January 12, 1991 and owned the property until 2001.

8. While operational, the K&L metal plating facility generated zinc plating sludge; lead and chromium dust; copper, zinc, and nickel cyanide waste streams; waste containing sodium hydroxide; and spent hydrochloric, boric, and nitric acids. Sludge was generated from an on-site plating bath solution treatment unit that separated, flocculated, and neutralized waste streams from the plating operation before discharge to the sanitary sewer. The sludge was dewatered, compacted, and drummed on-site before transport for off-site disposal.

9. In May 1997, the Department inspected the K&L facility and noted hazardous waste violations, including problems with equipment maintenance, training, and hazardous waste storage.

10. Based on this inspection, the Department filed a complaint with the Alameda Superior Court on June 26, 1997. On July 16, 1997, the Court ordered K&L to cease business operations and to properly dispose of all chemicals, materials, and other substances from the Site.

11. On September 19 1997, the Department issued an Imminent and Substantial Endangerment Determination for the Pearmain Site, thereby enabling the Department to conduct appropriate response actions.

12. On September 30, 1997, the United States Environmental Protection Agency ("EPA") responded to a hydrochloric acid leak from a 1,500 gallon tank inside the bermed area of the K&L facility. EPA ordered an emergency response, which consisted of the removal and disposal of approximately 66,000 gallons of acids, bases, cyanide solutions, wastewater, and other liquids.

13. On March 25, 1998, the Department issued an Order to Fence and Post, Docket #FP 97/98-003, to K&L and its owner, Robert McSkimming. It also issued an Order to Fence and Post, Docket #FP 97/98-004, to Audrey Berkson, Executrix of the Estate of Reitman, which owned the property at the time.

14. In December 1998, the Department's contractor removed all the vats, tanks, drums, and miscellaneous debris remaining at the Pearmain Site, at a cost of approximately $180,000. At that time, soil, groundwater, and wipe samples from the facility were collected to

[COMPLAINT FOR RECOVERY OF RESPONSE COSTS] -

assess the presence of contamination. Sampling results identified residual metals contamination on the walls and floors of the facility; low levels of arsenic and metals in the subsurface soil, and variable levels of metals in the groundwater.

15. The Department developed a Removal Action Workplan ("RAW") for the Site to address the residual contamination of structures, debris, and soil at the Pearmain Site. A Public Participation Plan was finalized in October 1999, and a draft RAW was made available for public review and comment in the spring of 2000.

16. In June 2000, the Department finalized the RAW. The final RAW was prepared in a manner consistent with EPA's *Guidance on Conducting Non-Critical Removal Actions Under CERCLA*, which contains the process for developing an Engineering Evaluation/Cost Analysis in compliance with the National Contingency Plan.

17. The Department's contractor began implementation of the RAW in August 2000. From August 2000 to November 2000, the contractor conducted decontamination activities, including high-pressure triple rinsing of the floors and walls of the structures; removal of debris; collection of confirmation samples from the floors and walls; and collection of soil samples beneath the most deteriorated concrete in the facility, to assess the underlying soil. Cleanup activities resulted in filling one 20-cubic-yard bin with concrete and debris, seven 55-gallon drums with debris and dust, and a 6,000 gallon tank of decontamination water for subsequent disposal. All cleanup activities were conducted using state funds.

18. Cleanup activities did not include scarification of the concrete surfaces of the structures. Confirmation sampling wipes of the structures showed that residual metals contamination, including cadmium, copper, chromium, nickel, lead, zinc, and cyanide, remained on the floors and walls. Soil sampling results indicated that subsurface soil beneath the deteriorated concrete was not contaminated.

19. In February 2001, the Estate of Reitman sold the 10323 Pearmain Street parcel to the current owners, Bennett Christopherson, Elin Christopherson, and Hans-Juergen Bergmann ("Current Owners"). The Current Owners acquired the remaining two parcels – 10301 Pearmain Street and 10319 Pearmain Street – through a foreclosure sale in February 2002. They acquired

[COMPLAINT FOR RECOVERY OF RESPONSE COSTS] -

4

all three properties with the full knowledge that the properties were contaminated, and that the Department had incurred costs to investigate the contamination and to perform removal and remedial actions at the Site.

20. In the fall of 2002, the Department and its contractors began discussing options to address the remaining contamination at the Pearmain Site. The Department's contractor submitted a workplan in spring 2003 for additional remediation. However, the Current Owners indicated that they wished to complete the cleanup activities themselves. As a result, on September 30, 2003, the Department and the Current Owners entered into a Consent Order (#HSA-CO 03/04-035). Pursuant to the Consent Order, the Current Owners would undertake the remediation identified in the workplan, and the Department would oversee those activities. The Current Owners agreed to pay for current and future oversight costs, and to negotiate the Department's past costs concurrently with the implementation of the Consent order.

21. On December 22, 2005, the Department and the Current Owners entered into a Settlement Agreement and Consent Order that ordered the Current Owners to pay $92,000.00 over a four-year term in monthly installments of $1533.33. Additionally, the Current Owners agreed to remove the concrete surface in the building located at 10323 Pearmain Street and to conduct confirmatory sampling. To date, the Department has received twelve monthly payments from the Current Owners in the amount of $1533.33 each, totaling $18,399.96.

22. The Current Owners submitted a Summary of Completion of work to the Department on April 21, 2006. On May 10, 2006, the Department issued a certification letter acknowledging that no further actions were required at the Pearmain Site.

23. The Department notified representatives of the Reitman Estate – both Audrey Berkson, Executrix, and Benjamin Warwick, attorney for the Estate – of the settlement with the Current Owners by forwarding both individuals copies of the Notice of Intent to Enter a Settlement that had been published in the California Regulatory Notice Register.

24. The Department then requested, by letter dated May 10, 2006, to meet with representatives of the Reitman Estate to discuss a settlement for the remaining costs incurred at the Pearmain Site.

[COMPLAINT FOR RECOVERY OF RESPONSE COSTS] -

5

25. A settlement meeting was held on June 14, 2006. Mr. Warwick attended as the representative of the Reitman Estate. He offered $10,000 to settle the Estate's liability. The Department declined to accept that offer. Mr. Warwick indicated that no other offer would be made.

### FIRST CLAIM FOR RELIEF

(Claim for Recovery of Response Costs Pursuant to Section 107(a) of CERCLA)

26. Paragraphs 1 through 25 are realleged and incorporated by reference herein.

27. The Pearmain Site is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

28. Cadmium, copper, chromium, hydrochloric acid, lead, nickel, zinc, and cyanide are "hazardous substances" as defined by section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

29. The leaking of hydrochloric acid from a tank inside the K&L facility constituted a "release" or threatened release of hazardous substances into the environment from the facility, within the meaning of section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

30. The presence of cadmium, copper, chromium, lead, nickel, zinc, and cyanide on the floors and walls of the K&L facility constituted a "release" or threatened release of hazardous substances into the environment from the facility, within the meaning of section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

31. As a result of the release or threatened release of hazardous substances from the Pearmain Site, the Department has undertaken "response" actions and incurred "response" costs, including the costs of oversight, within the meaning of section 101(25) of CERCLA, 42 U.S.C. § 9601(25), in an amount of not less than $285,061.77

32. The response actions of the Department at the Pearmain Site and the costs incurred in relation to such response actions were not inconsistent with the relevant National Contingency Plan, 40 C.F.R. Part 300.

33. The Department has satisfied all conditions precedent to the undertaking of response actions, the incurring of response costs, and the recovery of those costs under section 107 of CERCLA, 42 U.S.C. § 9607.

34. The Department's response actions include emergency cleanup; removal of containers and debris; decontamination of structures and off-site disposal of contaminated debris and decontamination water; implementation of a RAW; and oversight of remedial activities by the Current Owners.

35. Response actions were initiated in 1997 and continued until the Department issued a Summary of Completion in 2006. Therefore, this complaint is timely under section 112(d) of CERCLA, 42 U.S.C. § 9612(d) and 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2).

36. Defendant Audrey Berkson, Executrix of the Reitman Estate, is a "person" within the meaning of section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

37. Defendant Estate of Reitman is a "person" within the meaning of section 101(21) of CERCLA, 42 U.S.C. § 9601(21). *Castlerock Estates, Inc. v. Estate of Markham*, 871 F. Supp. 360, 364 (N.D. Cal. 1994); *Bowen Engineering v. Estate of Reeves*, 799 F. Supp. 467, 475 (D.N.J. 1992).

38. Defendant Audrey Berkson, as Executrix of the Estate of Reitman, which owned the Pearmain Site at the time of release, is a "person who at the time of disposal of any hazardous substance owned or operated" the Pearmain Site within the meaning of sections 101(20)(A) and 107(a)(2) of CERCLA, 42 U.S.C. §§ 9601(20)(A), 9607(a)(2).

39. Defendant Estate of Reitman, which owned the Pearmain Site at the time of release, is a "person who at the time of disposal of any hazardous substance owned or operated" the Pearmain Site within the meaning of sections 101(20)(A) and 107(a)(2) of CERCLA, 42 U.S.C. §§ 9601(20)(A), 9607(a)(2). *Castlerock*, 871 F. Supp. at 364; *Bowen*, 799 F. Supp. at 475.

40. Defendant Audrey Berkson is jointly and severally liable without regard to fault to the State of California under section 107(a) of CERCLA, 42 U.S.C. § 9607(a), in an amount not less than $285,061.77 for all past and future response costs incurred by the Department at the Pearmain Site.

41. Defendant Estate of Reitman is jointly and severally liable without regard to fault to the State of California under section 107(a) of CERCLA, 42 U.S.C. § 9607(a), in an amount

[COMPLAINT FOR RECOVERY OF RESPONSE COSTS] -

1 | not less than $285,061.77, for all past and future response costs incurred by the Department at the
2 | Pearmain Site.

3 | PRAYER FOR RELIEF

4 | WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants as
5 | follows:

6 | For a judgment that Audrey Berkson, Executrix of the Estate of Reitman, and the
7 | Estate of Reitman, are jointly and severally liable to the State of California, without regard to
8 | fault for all response costs incurred, which costs, to date, total an amount not less than
9 | $285,061.77;

10 | For costs of this suit;

11 | For attorneys fees;

12 | For other such relief as the Court deems just and appropriate.

15 | Dated: May 25, 2007

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California
THEODORA BERGER
Senior Assistant Attorney General
SALLY MAGNANI KNOX
Supervising Deputy Attorney General
DEBORAH R. SLON
Deputy Attorney General

by _/s/ Deborah Slon_

DEBORAH SLON
Deputy Attorney General

Attorneys for California Department of Toxic Substances Control

[COMPLAINT FOR RECOVERY OF RESPONSE COSTS] -
8