EDMUND G. BROWN JR.
Attorney General of the State of California
THEODORA BERGER
Senior Assistant Attorney General
SALLY MAGNANI KNOX
Supervising Deputy Attorney General
DEBORAH R. SLON, State Bar No. 240839
Deputy Attorney General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 327-7851
  Fax: (916) 327-2319
  Email: Deborah.Slon@doj.ca.gov

Attorneys for Plaintiff
California Department of Toxic Substances Control

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL,<br><br>                Plaintiff,<br><br>v.<br><br>ESTATE OF REITMAN, EX REL. AUDREY BERKSON, AND AUDREY BERKSON, EXECUTRIX,<br><br>                Defendants. | Case No. CO7-02779 WDP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDICIAL APPROVAL OF CONSENT DECREE**<br><br>Hearing:   December 4, 2007<br>Time:      4:00 p.m.<br>Courtroom: 4, 3rd Floor<br>Judge:     The Honorable<br>              Wayne D. Brazil |

## I. INTRODUCTION

This motion seeks approval of a settlement between California Department of Toxic Substances Control ("Department" or "Plaintiff") and Defendants Estate of Reitman, ex rel. Audrey Berkson and Audrey Berkson, Executrix ("Settling Defendants"). This case concerns the contaminated Pearmain Site in Alameda County, California ("Pearmain Site" or "Site"). The Department submits this Memorandum of Points and Authorities in Support of its Motion requesting

///

this Court's approval of the Consent Decree it has entered into with Settling Defendants. The Consent Decree, which has been lodged with the Court, represents a complete settlement of all the claims the Department has asserted in this action.

## II. FACTUAL BACKGROUND

### A. The Plaintiff

The Department is the State agency with authority over the cleanup of Sites where hazardous substances have been released. (Health and Safety Code § 25300 *et seq.*) Pursuant to sections 107 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, 9607, 9613, the Department may file actions in this Court in order to recover "response costs" that it has incurred at contaminated sites; the Department may enter into settlements with respect to such Sites; and these settlements confer contribution protection on the settling parties.

### B. The Settling Defendants

The Settling Defendants are the Estate of Reitman, ex rel. Audrey Berkson, Audrey Berkson, Executrix, and all successors in interest or assigns.

### C. Background of the Site

#### 1. Facility Operations and Site Contamination

Upon Abraham Isadore Reitman's death, the Estate of Reitman acquired the Pearmain Site, comprised of three parcels of property. The Estate, through its executrix, Audrey Berkson, leased one parcel and sold the other two to the owner of K&L Plating Company, a metal plating facility. K&L operated on the Pearmain Site from 1993 to 1997. As a result of its business operations, K&L generated a significant amount of hazardous waste, including zinc plating sludge; lead and chromium dust; copper, zinc, and nickel cyanide waste streams; waste containing sodium hydroxide, and spent hydrochloric, boric, and nitric acids. This waste contaminated the Site. In July 1997, in response to a complaint filed by the Department, the Alameda Superior Court ordered K&L to cease business operations and to properly dispose of all chemicals, materials, and other substances from the Site. A few months later, a 1,500 gallon tank containing hydrochloric acid leaked inside the bermed area of the K&L facility.

2. The Department's Authority

The Department is the State agency with authority over cleanup of the Site. The Department has acted pursuant to its authority under both state and federal law to ensure that the "potentially responsible parties" undertake and fund the Site cleanup. "Potentially responsible parties" (or "PRPs") are the parties that may be held jointly and severally liable for cleanup or "response costs" for the Site. CERCLA Section 107(a) defines the following classes of persons as potentially liable:

> (1) the **owner and operator** of a vessel or a facility,
>
> (2) any person who at the time of disposal of any hazardous substance **owned or operated** any facility at which such hazardous substances were disposed of,
>
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or **arranged** with a transporter for transport **for disposal or treatment,** of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who **accepts** or accepted any hazardous substances **for transport** to disposal or treatment facilities. . . .

42 U.S.C. § 9607(a) (emphasis added). These classes are commonly referred to as (1) "owner/operator" PRPs, (2) "arranger" PRPs, frequently also referred to as "generator" PRPs, and (3) "transporter" PRPs. In an action brought by the State under CERCLA, all PRPs are jointly and severally liable for the costs incurred by the State. *California v. Montrose Chemical Corp.*, 104 F.3d 1507, 1518 n.9 (9th Cir. 1997). In the present action, the Department has alleged that the Settling Defendants, here "owner/operators" at the time of disposal, are liable for the cleanup costs that the Department has incurred with respect to the Pearmain Site.

3. The Department's Response Actions

In June 1997 the Department filed a complaint with the Alameda Superior Court alleging a variety of hazardous waste violations at the Site. In response, the court ordered K&L to cease business operations and to properly dispose of all chemicals, materials, and other substances from the Site. In September 1997, the Department formally determined that the Site posed an imminent and substantial endangerment to public health and the environment. Subsequently, the tank holding

1,500 gallons of hydrochloric acid leaked inside the K&L facility, requiring an emergency response by the United States Environmental Protection Agency. In December 1998, the Department hired a contractor to remove the vats, tanks, drums, and miscellaneous debris remaining at the Site. Sampling results showed residual metals contamination on the walls and floors of the K&L facility, low levels of arsenic and metals in the subsurface soil, and variable levels of metals in the groundwater.

### 4. The RAW

The Department developed a Removal Action Workplan ("RAW") to address the residual contamination of structures, debris, and soil at the Pearmain Site. The draft RAW was made available for public comment, and in June 2000 the Department finalized the RAW, consistent with EPA's *Guidance on Non-Critical Removal Actions Under CERCLA*. The Department's contractor began implementation of the RAW in August 2000. From August to November 2000, the contractor conducted decontamination activities, including high-pressure triple rinsing of the floors and walls of the structures; removal of debris; collection of confirmation samples from the floors and walls; and collection of soil samples beneath the most deteriorated concrete in the facility to assess the underlying soil. Cleanup activities resulted in filling one 20-cubic-yard bin with concrete and debris, seven 55-gallon drums with debris and dust, and a 6,000 gallon tank of decontamination water for subsequent disposal. All cleanup activities were conducted using state funds.

### 5. Settlement with Current Owners

In February 2001, the Estate of Reitman sold the 10323 Pearmain Street parcel to Bennett Chrisopherson, Elin Christopherson, and Hans-Juergen Bergmann ("Current Owners"). The Current Owners of 10323 Pearmain Street acquired the remaining two parcels – 10301 Pearmain Street and 10319 Pearmain Street – through a foreclosure sale in February 2002. They acquired these properties with the full knowledge that they were contaminated, and that the Department had incurred costs to investigate the contamination and to perform response actions at the Site.

The Department and the Current Owners entered into a Consent Order under which the Current Owners would undertake further remediation identified in the RAW, and the Department would oversee those activities. In December 2005, the Department and the Current Owners entered

into a settlement agreement, under which the Current Owners would pay $92,000 over a four-year term in monthly installments of $1533.33. Additionally, the Current Owners agreed to remove the concrete surface in the building located at 10323 Pearmain Street and to conduct confirmatory sampling. As of September 5, 2007, the Department has received $24,533.28 from the Current Owners. The Department has issued a certification letter acknowledging that no further action is required at the Pearmain Site.

**E.  The Current Litigation (C07-02779)**

On May 29, 2007 the Department filed the present action against the Estate of Reitman, ex rel. Audrey Berkson, and Audrey Berkson, Executrix. In its complaint, the Department seeks 1) cost recovery from these defendants, and 2) a declaration that they are jointly and severally liable for the cleanup of the Pearmain Site.

**F.  Terms of the Consent Decree**

1.  <u>Settlement Payment</u>

The Settling Defendants have agreed to pay $135,000 to the Department.

2.  <u>Basis for Calculation of Settlement Payment</u>

The Department's claim for cost recovery totaled $285,000. This calculation was based on the cost to the Department for the response activities it undertook at the Pearmain Site. However, the Estate is comprised of less than the total claim for recovery, making full recovery impossible. Consequently, the Department agreed to a discount in consideration of the status and resources of the Estate. and the costs of litigation. The settlement number is a compromise number that was agreed upon after a series of conversations between the parties.

3.  <u>Covenants Not to Sue</u>

In exchange for these payments, the Settling Defendants receive Covenants Not to Sue and Contribution Protection.

### III. DEPARTMENT'S REASONS FOR APPROVING THE DECREE

The Decree was signed after arms' length negotiation among the Department, the Attorney General's Office, and the Settling Defendants. The Department approved the Decree for the following reasons:

### A. Fair Allocation

As detailed above, the Decree requires the Settling Defendants to pay their fair share of the liability for the cleanup of the Site and the Department's costs.

### B. Site Cleanup

The Department has certified that no further cleanup is required at the Site. However, it is appropriate that the Department recover the costs it expended in response to a threatened or actual release.

### C. Litigation considerations

As explained above, in reaching the settlement, the Department was guided by the financial condition of the Estate and the costs of litigation.

## IV. NOTICE TO NON-SETTLING PARTIES

### A. Prior Publication and Mailed Notice

On August 17, 2007, the Department published notice of the Consent Decree in the California Regulatory Notice Register. This notice stated that the Department planned to enter into a settlement with the Estate of Reitman, ex rel. Audrey Berkson and Audrey Berkson, Executrix. The notice also informed interested parties of their opportunity to comment on the Consent Decree, as well as the procedures for doing so. The Department provided a mailed copy of this notice to all interested parties. The Department did not receive any comments on the Consent Decree.

## V. THIS COURT SHOULD APPROVE THE CONSENT DECREE AS A "FAIR AND REASONABLE" SETTLEMENT

In determining whether to approve a CERCLA consent decree, a district court should consider whether the decree is "reasonable, fair and consistent with the purposes that CERCLA is intended to serve." *United States v. Cannons Engineering Corp.*, 899 F.2d 79, 85 (1st Cir. 1990). The district court's review should be informed by the general federal policy favoring settlements, *see, e.g., Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983), cert. denied, 467 U.S. 1219 (1984)) which is "[o]ne of the core purposes of CERCLA." *California Department of Toxic Substances Control v. City of Chico*, 297 F. Supp. 2d 1227, 1235 (E.D. Cal. 2004). Accordingly, in conducting its review, the court should "take a broad view of proposed

settlements, leaving highly technical issues and relatively petty inequalities to the discourse between the parties . . . [and treating] each case on its own merits, recognizing the wide range of potential problems and solutions." *United States v. Charles George Trucking,* 34 F.3d 1081, 1088 (1st. Cir. 1994), quoting *Cannons,* supra, 899 F.2d at 85-86. Where, as here, the settlement has been negotiated by a governmental agency with expertise in enforcing environmental laws, a district court should "give a proper degree of deference to the agency's expertise," *United States v. Akzo Coatings of Am.,* 949 F.2d 1409, 1426 (6th Cir. 1991), and must approve the settlement unless it is arbitrary or capricious. *Id.*

In *Cannons*, 899 F.2d at 85-93, the First Circuit established the following specific factors for district courts to use in deciding whether to approve a Consent Decree under CERCLA: (1) procedural fairness, (2) substantive fairness, (3) reasonableness, and (4) fidelity to the statute. All four of these factors are present in this settlement.

### A. The Consent Decree Is Procedurally Fair

The Consent Decree is procedurally fair. "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness and bargaining balance." *Cannons*, 899 F.2d at 86. Here, the Decree is the product of an open and candid process. Each party was represented by counsel, and the Decree was negotiated at arms' length.

DTSC took the lead in shaping the Decree. As the Ninth Circuit noted in *United States v. Montrose Chemical Corp*:

> . . . CERCLA's policy of encouraging early settlement is strengthened when a government agency charged with protecting the public interest 'has pulled the laboring oar in constructing the proposed settlement.'

50 F.3d 741, 746 (9th Cir. 1995), quoting *Cannons,* 899 F.2d at 84.

Here, the Department drafted the pending decree and initiated the settlement process. The Department also provided mailed notice of the pending consent decree to all interested parties at the Site so that they could inform the Court of any concerns they may have.

The Department has thus ensured procedural fairness by (i) engaging in arms' length negotiations with the Settling Defendants, (ii) drafting the Decree and (iii) providing the non-settling parties with notice of the settlement.

**B. The Consent Decree is Substantively Fair**

    1. Standard of Review

Substantive fairness involves whether the parties bear their comparative share of the cleanup costs. *Cannons*, 899 F.2d at 87. The determination of comparative fault, however, should be left largely to the government's expertise and "the chosen measure of comparative fault should be upheld unless it is arbitrary, capricious, and devoid of a rational basis." *Id.* Moreover, if the governmental entity negotiating the Decree has ensured procedural fairness, then comparative levels of fault are only "minimally relevant." *Arizona v. Motorola, Inc.* 139 F.R.D. 141, 148 (D.Ariz. 1991).

    2. The Decree requires substantively fair payments from the defendants

The Decree requires fair payments from the Settling Defendants. The Department contends that the Estate owned the Pearmain Site at the time of the release or threatened release. The Decree calculates the settlement amount according to the response costs incurred by the Department. The Estate and its Executrix received a discount due to the financial situation of the Estate. This discount represents a consistent, rational approach to calculating the settlement payment and appropriately "weld[s] some reasonable linkage between the factors [the Department] includes in its formula or scheme and the proportionate shares of the settling PRPs." *Cannons*, 899 F.2d at 87. The Decree requires the Settling Defendants to make a significant, carefully calculated payment toward the cleanup of the Site.

**C. The Consent Decree is reasonable**

The court in *Cannons* considered four factors in determining whether the settlement there was "reasonable."

    1. Effectiveness

First, the court considered whether the settlement was likely to be effective in ensuring a cleanup. *Cannons*, 899 F.2d at 89-90. Here, the Department has completed its response actions and the Current Owners have finalized those response actions. The Department certified in May 2006 that no further actions are required to remedy environmental conditions at the Site.

### 2. Benefit to the Public

The *Cannons* court next considered whether the settlement satisfactorily compensated the public. *Id.* at 90. Here, the public is adequately compensated because the Decree requires the Settling Defendants to pay a fair share of the costs incurred by the Department, less a mutually agreed-upon discount.

### 3. Relative Strengths of the Parties

Third, the *Cannons* court considered whether the settlement reflected the relative strengths of the parties' bargaining positions. *Id.* Here, the Decree properly reflects this factor. The Settling Defendants – acknowledged owners of the Site at the time of release – will pay their share of the Department's costs, less a mutually agreed-upon discount.

### 4. Faithfulness to CERCLA

Fourth, the *Cannons* court considered whether the settlement was faithful to the statute. *Id.* at 90-91. CERCLA's twin goals are: (1) to create a prompt and effective response to hazardous waste problems; and (2) to ensure that those responsible for the problems caused by disposal of chemical poisons, bear the costs and responsibility for remedial action. *Id.*

As noted above, the Department has already responded to the release or threatened release. This Decree requires that the Settling Defendants pay for their share of the cleanup work. The Decree therefore provides that "those responsible for the problems their disposal caused bear the costs" of the response action. *Id.*

///
///
///
///
///
///
///
///
///

## VI. CONCLUSION

The Decree represents the best efforts of the Department and the Settling Defendants to resolve this matter. Accordingly, for the reasons described in this memorandum, the Department respectfully requests that this Court approve the Consent Decree.

Dated: September 25, 2007

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

THEODORA BERGER
Senior Assistant Attorney General

SALLY MAGNANI KNOX
Supervising Deputy Attorney General

*/s/ Deborah Slon*

DEBORAH R. SLON
Deputy Attorney General
Attorneys for Plaintiff
California Department of Toxic Substances Control

30335272.wpd
SA2007600299